AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED

FEB 0 5 2016

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
iPhone, Model: A1524, FCC ID: BCG-E2817A, IMEI: )
358351063387166 )
)

Case No.  '16 MJ 0353

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
| --- | --- |
| 18 U.S.C. Sec. 554 | Smuggling Goods from the United States |

The application is based on these facts:
See Attached Affidavit in Support of federal Search Warrant

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Christine Lin, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/5/16

*Judge's signature*

City and state: San Diego, CA

Bernard G. Skomal, U.S. Magistrate Judge
*Printed name and title*

| Return |||
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

| Inventory made in the presence of : |
|---|

| Inventory of the property taken and name of any person(s) seized: |
|---|
|  |

| Certification |
|---|
| I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge. <br><br> Date: _____ <br><br> _____ <br> *Executing Officer's Signature* <br><br> _____ <br> *Printed name and title* |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

IN THE MATTER OF THE SEARCH OF:

| | |
|---|---|
| iPhone<br>Model: A1524<br>FCC ID: BCG-E2817A<br>IMEI: 358351063387166 | ) Case Number:<br>)<br>)<br>)<br>) AFFIDAVIT OF SPECIAL<br>) AGENT CHRISTINE LIN<br>) IN SUPPORT OF SEARCH<br>) WARRANT<br>)<br>)<br>)<br>) |

## AFFIDAVIT

I, Christine Lin, Special Agent with the United States Department of Homeland Security, Homeland Security Investigations, having been duly sworn, depose and state as follows:

### INTRODUCTION

1. I make this affidavit in support of an application for a search warrant in furtherance of a Title 18, U.S.C., § 554 investigation, smuggling goods from the United States, conducted by Special Agents of the Department of Homeland Security, Homeland Security Investigations ("HSI"), for a cellular telephone seized on February 2, 2016, from Yang Xin ("Xin"), at 12707 High Bluff Drive, Del Mar, CA 92130. The cellular telephone is a iPhone, Model: A1524, FCC ID: BCG-E2817A, IMEI: 358351063387166 ("Target Telephone").

2. The Target Telephone was seized from Xin on February 2, 2016, at approximately 10:00 a.m. Xin met with an Undercover Agent ("UCA") at 12707 High Bluff Drive, Del Mar, CA 92130. Xin gave the UCA $20,000 cash in exchange for a GPNVG18, discussed further below. During the meeting, the UCA stated that it was important that Xin removed the serial numbers on the GPNVG18 prior to shipping as it could lead to jail time for the UCA's supplier. At

1

approximately, 10:26 a.m., Xin abruptly terminated the meeting and stated that he would message the UCA later. Xin was arrested and charged with violation of Title 18 USC 554, Smuggling Goods from the United States. Xin was subsequently transported to Metropolitan Correctional Center in San Diego, CA.

3. Probable cause exists to believe that the Target Telephone contains evidence relating to violations of Title 18, United States Code Sections 554, Smuggling Goods from the United States. The specified telephone is currently in HSI possession at 185 West F. Street, #600, San Diego, CA 92101.

4. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I believe the items to be seized set forth in Attachment B (incorporated herein) will be found in the items to be searched as described in Attachment A (incorporated herein). These items may be or lead to: (1) evidence of the existence of smuggling goods from the United States in violation of Title 18, United States Code Sections 554; (2) contraband, fruits of crime, or things otherwise criminally possessed; and (3) property designed or intended for use, or which is or has been used as a means of committing criminal offense.

## EXPERIENCE AND TRAINING

5. I am a Special Agent with HSI and have been so employed since March 2012. I am a graduate of the Criminal Investigator Training Program at the Federal Law Enforcement training Center. My current responsibilities include investigating the illegal transfer and export of commodities, information, and services from the United States, which are regulated by the United States Departments of State, Commerce, and the Treasury. While working as a Special Agent with HSI, I have investigated violations of federal law, including the illegal transfer and export of commodities, information, and services from the United States, money laundering, and fraud against the government.

6. Through the course of my training, investigations and conversations with other law enforcement personnel, I am aware that it is a common practice for individuals who smuggle goods to work in concert with other individuals and to do so by utilizing a cellular telephone and portable radios to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies

involving the smuggling of goods generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messages, emails, instant messages, social networking messages, and phone numbers of co-conspirators.

7. Based on my training and experience and consultation with other agents experienced in conducting counter proliferation investigations, I understand that individuals attempting to circumvent the U.S. export laws often utilize cellular telephones because they are mobile and they have instant access to telephone calls, text, email, web, social networking websites, and voice messages to conduct business.

## THE GPNVG18

8. The Ground Panoramic Night Vision Goggle-18 ("GPNVG18") is manufactured by L-3 Warrior Systems. The GPNVG18 is a wide field-of-view helmet-mounted image-intensified night-vision device. On November 24, 2015, the Office of Defense Trade Controls Policy conducted a preliminary internal review of GPNVG18. The findings of that review are that the GPNVG18 is a defense article subject to the jurisdiction of the Department of State in accordance with the International Traffic in Arms Regulations ("ITAR") and falls under the United States Munitions List ("USML") under Category XXII(c). USML Category XII(c) identifies "second generation and above military image intensification tubes...[s]pecifically designed, developed, modified, or configured for military application," which covers this device. A license or other approval is required pursuant to the ITAR prior to any export or temporary import.

## FACTUAL BASIS FOR PROBABLE CAUSE

9. In September 2014, HSI San Diego began an investigation of the suspected illegal activities of Xin, also known as "Troy Shin," an individual residing in the People's Republic of China (China). On September 24, 2014, a federal Magistrate Judge in the Southern District of California signed a search warrant for, among other things, the content of an email account utilized by Xin.

10. Evidence obtained from that search warrant revealed that from June 2014 to September 2014, Xin had procured approximately fifteen (15) Advanced Target Pointer Illuminator Aiming Lasers AN/PEQ-15, also known in the trade as the LA-5 ("LA-5") and other ITAR-controlled items from an individual identified as Steven Paul Browning and other suppliers from the U.S. HSI agents have determined from a serial number of an LA-5 in a photograph that Xin sent via e-mail that the LA-5 in Xin's possession was part of $1.7 million worth of government equipment that was stolen from Marine Corps Base Camp Lejeune. A preliminary review of Xin's login information from June 2014 – September 2014 revealed email IP addresses originating from China and Hong Kong.

11. In October 2014, a cooperating source informed HSI agents that an individual utilizing eBay screen name "govclodoo" was attempting to acquire the GPNVG18. A HSI UCA assumed negotiations with the user of eBay screen name "govclodoo." The user of eBay screen name "govclodoo" sent emails to the UCA from an email account that was utilized by Xin.[1]

12. On or about October 17, 2014, Xin emailed the UCA seeking additional information about the GPNVG18. Xin also asked for detailed pictures of the unit.

13. On or about October 18, 2014, the UCA emailed Xin. In the email, the UCA stated, "the price is $19,500. It's used and won't have serial number. I'm sure you can understand…Let me know if that's ok for you."[2]

14. On November 17, 2014, Xin sent an email to the UCA, "Ok, waiting for my

---

[1] Xin's e-mail address, birthday and home address on his Visa application matched information that HSI had obtained from his PayPal account which Xin attempted use as a method of payment for the GPNVG18. Xin provided the PayPal account to the UCA via email at a time he used the name "Troy Shin." Paypal list several addresses, including the PRC address. The PRC address on Xin's U.S. Visa application is the exact match to the Paypal PRC address.

[2] It is common for those engaged in the illegal export of controlled technology to remove serial numbers from the items being sold. It is also common practice to obscure the serial numbers of these items when sending pictures via email.

payment, thank you." The UCA responded on November 17, 2014, "Ok when you pay, can you break the payments up so they're all under $10,000? I think PayPal will give me problems or maybe ask questions if I get more than $10,000 in one payment." In another email the same day, the UCA provided his PayPal address to Xin.

15. On November 23, 2014, Xin emailed the UCA. In the email, Xin wrote, "Please send 2 invoices to freenight4@gmail.com, $100000 each." The UCA responded, "Ok what do you want me to put on the invoices?" Xin responded the same day:

> Just detail of transaction, like this:
> Payment part 1 of L-3 GPNVG-18 Dovetail Mount Ground Panoramic Night Vision Goggle, and Payment part 2 of L-3 GPNVG-18 Dovetail Mount Ground Panoramic Night Vision Goggle.

16. Xin and the UCA exchanged approximately nine more emails regarding the payment logistics through PayPal, Xin's desire to receive the GPNVG18 prior to making payment, and Xin's desire to make sure the UCA didn't abscond with the money. Although Xin never told the UCA that the device was destined for China, the investigating agents were confident, based on Xin's past purchasing patterns, that he was going to use a re-shipper in the United States to send the device to China. On December 3, 2014, the UCA emailed Xin and stated the following:

> I'm definitely not going to put myself in a spot where I have to hassle a PayPal dispute if there is a problem with your payment, because what am I going to tell PayPal???? Dear PayPal, I tried to sell a guy some stolen military gear, that I shipped without an export license, and now I can't get my money back??? Are you kidding me? Come on. I think the easiest way for both of us to be sure we're not getting ripped off is we just meet face to face in Hawaii.

17. Xin replied, "Yep face to face in Hawaii, that's good, what's time you plan?" Over the course of several emails in early December both parties agreed to postpone a meeting until after the New Year. On December 17, 2014, the UCA checked in with Xin, "Hey man are you still planning on buying the GPNVG?" to

5

which Xin replied the same day, "Yes."

18.     Subsequent to December 2014, Xin ceased sending emails to the UCA.

19.     On September 1, 2015, Xin emailed the UCA. In the email, Xin stated, "Long time no see but still have interest for gpnvg."

20.     On September 4, 2015, the UCA emailed Xin and stated:

"Hey man, before I go spend time looking for this. Are you serious about buying the GPNVG? Last time, you put me in a bad spot when you bailed on me last minute."

21.     On the same day, Xin emailed the UCA and stated the following:

"Yeah I'm serious! Last time transaction is hardly for me go to Hawaii, I think maybe we can have completed deal if through PayPal."

22.     Between September 8, 2015 and October 14, 2015, Xin and the UCA exchanged several emails and summarily discussed the price and payment method for the GPNVG18.

23.     On October 16, 2015, Xin sent $1.00 to the UCA's paypal account. On October 19, 2015 the UCA emailed Xin stating the following:

"Did you send me a dollar through PayPal? Listen I don't receive payment through PayPal anymore, especially with foreign customers. I've been ripped off too many times. I've actually had a guy return a box of candy to me and PayPal returned the money to the buyer!! Bottom line, I'm not comfortable using PayPal. If you want to use paypal, you go find somebody else to sell you the gpnvg18. Good luck finding a person that is willing to ship to china without getting an itar license. I tried my best to respond to all your request, I'm starting feel like I'm wasting my time."

24. On the same day, Xin emailed the UCA and replied, "Why you talk about ship to China? Are you agent? NSA? FBI? Is it a real transaction?"

25. On October 21, 2015, the UCA emailed Xin. In the email, the UCA stated:

> Is this a joke??!! I've been in this business for 8 years, you think I can't tell if somebody is a foreign buyer? I'm not stupid. I don't like it when somebody lies to me. I don't want to argue with you anymore because it's pointless. If you don't want to buy then I'm moving on. You are stressing me out man.

26. On October 21, 2015, Xin emailed the UCA indicated that he would pay cash for the GPNVG and pick the unit up at a location local to the UCA.

27. On October 28, 2018, Xin emailed the UCA informing the UCA that his "buddy" would pick up the GPNVG18.

28. During subsequent emails between November 12, 2015 and November 30, 2015, Xin and the UCA attempted to coordinate a meeting between Xin's "buddy" and the UCA.

29. Subsequent to November 30, 2015, the UCA ceased email communication with Xin. Between December 2, 2015 and December 5, 2015, Xin continued to email the UCA regarding the meeting.

30. Research in government databases revealed that on November 6, 2015, Xin was issued a temporary business/pleasure visitor visa, specifically a tourism and medical treatment visa, for entry into the U.S. Records show that on November 23, 2015, Xin travelled from Pu Dong Airport in Mainland China to Los Angeles International Airport. Records also revealed that Xin reported being in possession of currency in the amount $21,004.00.

31. On January 5, 2016, the UCA reestablished contact with Xin via email. In the email, the UCA inquired if Xin was still looking to buy the GPNVG18.

32. On the same day, Xin emailed the UCA. In the email, Xin wrote:

   You'd better explain clear what's going on last time, you wasted my almost half month times, I think you can't be trusted unless a reasonable explanation.

33. On January 6, 2016, the UCA emailed Xin and stated the following:

   Hey man, I tried waiting a month for you, but I got a better offer for the GPNVG18. I can't say no, if a customer is willing to pay me 20% more and pick up with cash. I have to run a business and I needed the money. I know I promised you a unit, so I tried really hard to get a second GPNVG18 for you. I hope you understand. If you are still looking to buy then let me know.

34. On January 7, 2016, the UCA emailed Xin photos of the GPNVG18. On the same day, Xin emailed the UCA requesting additional photos of the GPNVG18. On January 8, 2016, the UCA emailed Xin additional photographs of the GPNVG18. On the same day, Xin emailed the UCA and requested pricing for the GPNVG18.

35. On January 11, 2016, the UCA emailed Xin and stated the following:

   I spoke with my partner and we agreed that we can keep the price at $20,000. I would prefer cash and pick up. As you know, I can't keep this on the shelf for too long. Please give me an answer soon.

36. On January 11, 2016, Xin replied to the UCA and stated, "I will pick up at month end." In a following email, on the same day, Xin emailed the UCA and also wrote, "I plan book a flight from eastern at month end."

37. On January 20, 2016, Xin and the UCA agreed to meet on February 2, 2016.

38. On January 26, 2016, the affiant used the Automated Enforcement System to

8

run a license registrant[3] search on "Yang Xin" and "Troy Shin." No records of export licenses have been issued for the listed individuals.

## Xin meets with the UCA in San Diego

39.    On January 30, 2016, Xin crossed into the United States from Hong Kong International Airport into Los Angeles International Airport. During a secondary inspection, Xin declared the amount of $20,056 in U.S. currency.

40.    On February 2, 2016, at approximately 10:00 a.m. Xin met with the UCA at 12707 High Bluff Drive, Del Mar, CA 92130. During the meeting, Xin informed the UCA that he had previously purchased a GPNVG18 and that he wanted to purchase two more GPNVG18s. Xin stated that he also had interest in purchasing the PRC-117g radio and the PVS-31 Binocular Night Vision Device. At approximately 10:15 a.m., Xin gave the UCA $20,000 cash in exchange for the GPNVG18. During the meeting, the UCA stated that it was important that Xin removed the serial numbers on the GPNVG18 prior to shipping as it could lead to jail time for the UCA's supplier. At approximately, 10:26 a.m., Xin abruptly terminated the meeting and stated that he would message the UCA later. At approximately, 10:30 a.m., as Xin was arrested and charged with violation of Title 18 USC § 554, Smuggling Goods from the United States. Xin was transported to Metropolitan Correctional Center in San Diego, CA.

41.    Xin does not possess a license from the State Department to export a device listed on the USML.

42.    Based upon my experience and investigation in this case, I believe that Xin, as well as other persons as yet unknown, were involved in an on-going conspiracy to illegally export the GPNVG18 to China without obtaining a license from the Department of State. I know that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text

---

[3] Automated Enforcement System runs a license registrant search for licenses issued from the Directorate of Defense Trade Controls (DDTC), Bureau of Industry and Security (BIS), Office of Foreign Assets Control (OFAC) and other regulatory agencies.

messages, email messages, messages and posts from social networking sites like facebook, pictures and other digital information are stored in the memory of cellular telephone which identifies other persons involved in counter proliferation activities.

43. Based upon my experience and training, consultation with other law enforcement officers experienced in counter proliferation investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the illegal smuggling and his co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, email messages, messages and posts from social networking sites like facebook, pictures and other digital information are stored in the memory of the cellular telephone described herein.

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION

44. It is not possible to determine, merely by knowing the cellular telephone' make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephone and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device, which Xin could possibly have a co-conspirator do for him. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the

examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

45. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

46. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

47. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that Xin used the Target Telephone to facilitate the offense of smuggling or attempting to smuggle goods from the United States. The Target Telephone was likely used to facilitate the offenses by transmitting and storing data, which constitutes evidence, fruits, and instrumentalities of violations of Title 18, United States Code, § 554.

48. I also believe that probable cause exists to believe that evidence, fruits and instrumentalities of illegal activity committed by Barnes continues to exist on the Target Telephone.

49. Based upon my experience and training, consultation with other agents in counter proliferation investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth in Attachment B (incorporated herein) are likely to be found in the property to be searched described in Attachment A (incorporated herein). Therefore, I respectfully request that the Court issue a warrant authorizing me, a Special Agent

with Homeland Security Investigations, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A, and seize the items listed in Attachment B.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Christine Lin
Special Agent, HSI

Subscribed and sworn to before me this  5  day of February, 2016.

_____
Bernard G. Skomal
United States Magistrate Judge

12

## ATTACHMENT A

The property to be searched consists of:

    a cellular telephone

| | |
|---|---|
| Make: | Apple iPhone |
| Model #: | A1524 |
| FCC ID: | BCG-E2817A |
| IMEI: | 358351063387166 |

    and the SIM card inside the cellular telephone

| | |
|---|---|
| Make: | Unknown |
| Card #: | Unknown |

currently in the custody of Homeland Security Investigations at 185 West F. St, San Diego, CA 92101.

## ATTACHMENT B

The evidence to be seized pertains to the crimes of Title 18 U.S.C. 554 (Smuggling Goods From the United States), and is described as follows:

A. Any temporary or permanent electronic files, records, communications, or data related to:

1. the unlicensed export of goods, technology, or services for exportation, re-exportation, sale or supply, directly or indirectly to the People's Republic of China ("China"), specifically, but not limited to, the sale of a Warrior Systems Division Ground Panoramic Night Vision Goggle GPNVG-18; and

2. transactions, including purchasing, selling, transporting, swapping, brokering, approving, financing, facilitating, or guaranteeing of any goods, U.S. or foreign, to China; and

3. conspiracy to commit any of the acts described above.

B. Electronic data and files—including but not limited to registry information, logs, user profiles and passwords, web browsing history, cookies, calendars, instant messaging logs, emails, photos, and videos—tending to indicate who used or controlled the computer or storage media around the time when items in paragraph A above were created, accessed deleted, modified, copied, downloaded, uploaded, or printed.

The seizure and search of computers and computer media will be conducted in accordance with the "Computer Search Protocol" and "Procedures For Electronically Stored Information" provided in the affidavit submitted in support of this warrant. The warrant authorizes the search of existing data, deleted data, remnant data, and slack space.